IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ALEX RODGER, III, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 115-045 |
| | ) | (Formerly CR 109-040) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at the Federal Correctional Institution in Edgefield, South Carolina, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Petitioner's motion to address his new claims be **DENIED** (doc. nos. 6, 8), the § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I.  BACKGROUND

### A.  Trial

This case challenges Petitioner's convictions for armed robbery of a bank and carrying, using, and brandishing a firearm during a crime of violence for which he was found guilty and sentenced to life imprisonment after a jury trial. United States v. Rodger, CR 109-040, doc. no. 218 (Jan. 7, 2011) ("CR 109-040"). The Eleventh Circuit provided the following detailed description of the facts underlying the offenses based on evidence

introduced at trial:

In February 2009 the Bank of America in Richmond County, Georgia was robbed. Latoya Johnson, the victim teller, described the robber as an African–American man in his 50s or 60s with freckles who was wearing a blue jacket trimmed in red, a black shirt, a skull cap, and sunglasses. He was armed with a handgun. The robbery was captured by a surveillance camera located above the teller station.

Johnson gave the robber "bait money," which contained an electronic tracking device that sent a signal to the 911 call center. Based on the signal sent out from the bait money, the Richmond County Sheriff's Office determined that the stolen money was traveling westbound on Interstate 20 towards Columbia County. The sheriff's office coordinated with officers in Columbia County to slow down traffic in the westbound lane of I–20 and see if any of the vehicle occupants matched the description of the suspect. Because one of the officers was given an incorrect description of the robber, however, the suspect was not stopped in Columbia County and proceeded toward McDuffie County while traveling at speeds over 100 miles per hour.

The Richmond County Sheriff's Office then set up a roadblock in McDuffie County. Richmond County Sheriff's Deputy Rachel Hardin was observing traffic flowing through that roadblock when Rodger pulled up. Because Rodger matched the description of the robber, Hardin asked him to step out of his vehicle so that she could pat him down for weapons. He complied without objection. Hardin asked Rodger if she could look in the trunk of his car. He said "Sure," and opened the trunk using his key fob.

Once the trunk was open, Hardin observed a blue jacket that fit the witness descriptions she was given. Hardin asked Rodger if she could search the trunk further but he refused and, according to Hardin, he then "lung[ed] toward the jacket" and yelled "No." Hardin stopped the search and asked another officer to watch Rodger so that she could call an FBI agent to come to the scene and verify that Rodger was the bank robber. Before she was able to make the call, an FBI agent arrived and identified Rodger as the bank robber based on a surveillance photograph from the robbery. Deputy Hardin then arrested Rodger. After that, another officer arrived with a handheld receiver that was being used to track the bait money. As the officer approached Rodger's vehicle, the beeping sound from the receiver became more frequent, and once he was standing next to the trunk of Rodger's vehicle, the beeping sound became constant, signifying that the bait money was close by.

After Rodger was arrested, police officers removed the blue jacket from the trunk of his car. In its pockets the officers found a handgun, $6,304 in cash, and the bait money. The gun, which was loaded, matched the description of the one used in the robbery.

Deputy Hardin took Rodger back to the bank and three bank employees—Latoya Johnson, Gloria Ivory, a teller who observed the robbery, and Douglas Graves, a bank employee who had gotten a good look at the robber—were asked to participate in a show-up identification. The employees were taken to an enclosed foyer and were told that they could not communicate with each other until the show-up was over. Then, one at a time, the employees looked at Rodger through a glass window on the upper part of the door facing the parking lot. Rodger was standing in front of Hardin's patrol car with his hands handcuffed behind his back, and he was flanked on either side by Deputy Hardin and another officer. When Johnson was asked whether she recognized anyone standing outside the bank, she identified Rodger as the man who had robbed her. Graves was also asked whether he recognized anyone outside the bank, and he identified Rodger as the person who robbed the bank. Ivory later testified that at the show-up she was not able to identify Rodger as the person who had robbed the bank because he was not wearing the jacket, hat, or sunglasses worn by the robber.

United States v. Rodger, 521 F. App'x 824, 826-27 (11th Cir. 2013).

At his initial appearance and arraignment, Petitioner indicated that he wanted to proceed *pro se* and he was allowed to do so after a full hearing and questioning by the Court. CR 109-040, doc. nos. 8, 11. Jason R. Troiano was appointed as standby counsel. Id., doc. no. 11. Petitioner filed a pretrial motion to suppress evidence seized from his car, arguing that the stop of his vehicle, seizure of his person, and his arrest all violated the Fourth Amendment. Id., doc. no. 14. Petitioner also moved to suppress the out-of-court identifications made by the three bank employees, arguing that the show-up procedure was impermissibly suggestive and unreliable. Id., doc. no. 15. United States Magistrate Judge W. Leon Barfield recommended denial of both motions which was adopted by United States District Judge J. Randal Hall. Id., doc. nos. 116, 148.

3

As part of the multitude of pretrial motions, Petitioner moved for the Court to provide him with a "defense investigator" and for a subpoena under Fed. R. Crim. P. 17(c) requesting the names of twelve Columbia County deputies that corresponded with certain badge numbers. Id., doc. nos. 24, 96. The Court denied Petitioner's request for a defense investigator under 18 U.S.C. § 3006A(e), finding that Petitioner was attempting to utilize the statute as a surrogate for counsel which he had knowingly and voluntarily waived. Id., doc. no. 37, pp. 5-6. The Court also denied Plaintiff's request for a subpoena as to the name of the deputies because he failed to explain what testimony these deputies might offer that was relevant. Id., doc. no. 100, pp. 2-3. Petitioner appealed this ruling to Judge Hall who also denied the request. Id., doc. nos. 105, 261, p. 29.

Approximately three weeks before trial, Petitioner motioned for a subpoena under Fed. R. Crim. P. 17(c) for Sharon Kline, a bank manager, to appear at trial and bring the "proof work" from Latoya Johnson's drawer, which he claimed would show a discrepancy between the amount stolen from the bank and the amount seized from Petitioner. Id., doc. no. 157, p. 3. Judge Hall granted the subpoena for Sharon Kline to appear at trial but denied the motion as to the "proof work" because the government represented that all evidence in its possession had been given to Petitioner. Id., doc. no. 261, pp. 29-30.

Before reaching the guilty verdict, the jury submitted a question to Judge Hall which it then withdrew because it had reached a verdict. See id., doc. no. 216, pp. 1-2. Judge Hall, upon notice from the jury that it wished to withdraw the question, abided by the jury's wish and allowed the jury to withdraw the question and accepted the verdict. (Id.) Neither party objected to this course of action at the time. (Id.) In a motion after the trial, Petitioner moved

4

to unseal the jury note, arguing that Judge Hall should provide him with a copy of the note from the jury containing the question.  Id., doc. no. 190.  Judge Hall denied this motion, finding that unsealing the note was inappropriate given that no response was ever given to the note.  Id., doc. no. 216, pp. 1-5.

Sentencing for Petitioner was held January 7, 2011.  Id., doc. no. 217.  Petitioner was sentenced to 300 months on Count One and life imprisonment on Count Two to be served consecutively.  Id., doc. no. 218, p. 2.  Judgment on the conviction was entered on the same day.  Id.

### B. Appeal

Petitioner appealed his guilty convictions to the Eleventh Circuit.  Rodger, 521 Fed. App'x. at 824.  The Eleventh Circuit *sua sponte* appointed Petitioner counsel and allowed him to also file a brief *pro se*.  Id. at 828.  Petitioner raised the following grounds of error on appeal:

1. Petitioner's due process rights were violated by the introduction of out-of-court identifications made at the show-up procedure at the bank.

2. The reconstructed record of the events surrounding the second jury note did not afford him effective appellate review.

3. The district court abused its discretion in refusing to reveal the contents of the second jury note.

4. The district court abused its discretion in refusing to allow Petitioner to introduced an unredacted copy of the bank surveillance tape of the robbery.

5. The prosecutor engaged in misconduct by introducing the redacted surveillance tape without notice of its redactions and in introducing the perjured testimony of Douglas Graves that he saw Petitioner walk into the bank.

6. Petitioner was denied his Sixth Amendment right to confront the witnesses against him by the Court's refusal to allow him to introduce the unredacted surveillance tape.

7. The Court abused its discretion under the Federal Rules of Evidence in not allowing introduction of the unredacted tape.

8. The Court abused its discretion in denying his motion to subpoena an unnamed sheriff's deputy who allegedly wore badge number 92940 under Fed. R. Crim. P. 17(b).

9. The Court abused its discretion in denying his motion to subpoena Sharon Kline's "proof work" under Fed. R. Crim. P. 17(b).

10. The Court erred in denying Petitioner's motion to suppress the evidence seized from his car because no reasonable suspicion existed to stop him.

11. The Court erred in denying Petitioner's motion to suppress the evidence seized from his car because Deputy Hardin was without authority to arrest him in McDuffie County.

12. The Court erred in denying Petitioner's motion to suppress the evidence seized from his car because Deputy Hardin gave perjured testimony that she was with Deputy Whitfield when she arrested Petitioner.

13. The Court erred in denying Petitioner's motion to suppress the evidence seized from his car because the roadblock was not implemented pursuant to Georgia law and Constitutional standards.

(Doc. no. 16-2.) The Eleventh Circuit found these arguments to be without merit and affirmed Petitioner's convictions on appeal on June 6, 2013. Rodger, 521 Fed. App'x. at 834. Petitioner applied for a writ of certiorari to the United States Supreme Court which was denied on March 24, 2014. Rodger v. United States, 134 S. Ct. 1569, reh'g denied, 134 S. Ct. 2694 (2014).

### C. Habeas Petition

Petitioner executed the current § 2255 motion on March 19, 2015.  (Doc. no. 1, p. 27.)

In his original § 2255 motion, Petitioner alleges the following grounds of error:

1. Petitioner's convictions were obtained in violation of his right to receive pretrial notice of the government's intent to introduce the redacted tape.

2. Petitioner's convictions were obtained in violation of his right to notice of the redacted tape at trial and the opportunity to object to the tape.

3. Petitioner's due process rights were violated because the trial judge was precluded from exercising discretion over the government's introduction of the tape.

4. Petitioner's Sixth Amendment right to confront witness Douglas Graves was violated by the government's use of the redacted surveillance tape.

5. Petitioner's right to compulsory process was violated by the Court's denial of Petitioner's motion for Sharon Kline to bring her "proof work" to trial.

6. Petitioner's right to compulsory process was violated by the Court's denial of Petitioner's motion to subpoena the unnamed sheriff's deputies.

7. Petitioner's convictions were obtained in violation of Brady v. Maryland, 373 U.S. 83 (1963) by the prosecution's failure to turn over FBI documents showing the amount stolen from the bank.

8. Petitioner's convictions were obtained in violation of Giglio v. United States, 405 U.S. 150 (1972) by the prosecution's failure to turn over FBI documents showing the amount stolen from the bank.

9. The prosecution knowingly used perjured witness testimony from Douglas Graves in violation of Giglio.

10. The prosecution made false statements to the judge by stating the redacted portions of the surveillance tape were irrelevant.

11. Petitioner was prevented from presenting evidence in his favor by being denied the opportunity to play the full surveillance tape for the jury.

12. The trial judge committed error by failing to weigh Petitioner's Sixth Amendment right against a mechanical application of the Federal Rules of Evidence.

13. Petitioner's convictions were obtained in violation of his right to prepare for trial due to the Court's denial of his pretrial motions for subpoenas and for a defense investigator.[1]

14. Petitioner was not given the opportunity to present a complete defense due to his inability to obtain the subpoenas, the denial of his right to play the full bank tape, and the denial of the "proof work."

15. Petitioner's appellate counsel was ineffective.

   a) Appellate counsel failed to raise the issue that the prosecutor improperly commented on his right not to testify in closing.

   b) Appellate counsel failed to raise the trial judge's refusal to give a lesser-included offense instruction on unarmed robbery.

   c) Appellate counsel failed to raise the prosecutor's improper referral to Petitioner as a "bank robber" during an objection.

   d) Appellate counsel failed to raise the prosecutor's improper buttressing of Douglas Graves' testimony.

16. The trial court erred in not disclosing the contents of the second jury question to Petitioner.

17. Petitioner was denied due process on appeal by the district court's refusal to obey an Eleventh Circuit order to unseal the second jury note.

18. Petitioner's standby trial counsel had a conflict of interest, which prejudiced Petitioner's defense.

19. Petitioner was denied due process on appeal by the Eleventh Circuit due to its misinterpretation of testimony by Sharon Kline.

---

[1] Petitioner skipped number thirteen when enumerating his grounds of error. The Court has also combined Petitioner's Grounds 14 and 15 given that they contain the same claims. Thus, the Court's numbering from Ground 14 onward differs by two from Petitioner's numbering.

(See generally doc. no. 1.)  In a later filed memorandum, Petitioner expounded upon the above claims and added four new claims which he motioned the Court to address and deem timely under the one-year statute of limitations for § 2255 motions.  (Doc. nos. 6, 8, 9.)  The new claims were as follows:

> 15. Petitioner's appellate counsel was ineffective.
>
>> e) Petitioner's counsel failed to raise the issue that the district court abused its discretion in denying funds for a defense investigator.
>>
>> f) Petitioner's counsel failed to raise the issue that the district court abused its discretion in denying Petitioner's motion to continue.
>>
>> g) Petitioner's counsel failed to raise an insufficiency of the evidence defense.
>
> 20. The district court abused its discretion by denying the motion to continue the trial for medical reasons.

(Doc. no. 9-3, pp. 58, 89.)  Respondent contends that Plaintiff's new claims are untimely and do not relate back to the original petition, and his original claims are all procedurally barred, have been addressed on appeal, or are otherwise without merit.  (See generally doc. no. 16.)

## II.   DISCUSSION

### A.   There Is No Need For an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ."  28 U.S.C. § 2255(b).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled

9

to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004). While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Because Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary, and Petitioner's motion should be denied.

**B.      Petitioner's Claims in Grounds 15(e), 15(f), 15(g), and 20 are Untimely, Do Not Relate Back to His Original Petition, and Petitioner is Not Entitled to Equitable Tolling.**

In Petitioner's memorandum of law filed on May 27, 2015, Petitioner added four new claims not included in original petitioner, Grounds 15(e), 15(f), 15(g), and 20. Respondent argues that these claims fall outside of the one-year statute of limitations and do not relate back to claims made in the original petition. Petitioner does not contest that these claims were filed past the one-year statute of limitations but requests that the Court address these claims as sufficiently related to the original petition, or in the alternative, to grant him equitable tolling due to a lockdown at FCI Edgefield. (Doc. no. 8.)

First, Petitioner is not entitled to equitable tolling on his § 2255 motion. Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v.

Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005));

see also Lawrence v. Florida, 549 U.S. 327, 336 (2007). Nevertheless, equitable tolling is

typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is

available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d

1219, 1226 (11th Cir. 2003). The petitioner bears the burden of proving his entitlement to

equitable tolling and will not prevail based upon a showing of either extraordinary

circumstances or diligence alone; the petitioner must establish both. See Damren v. Florida,

776 F.3d 816, 822 (11th Cir. 2015).

Under Eleventh Circuit case law, prison lockdowns do not constitute extraordinary

circumstances such that equitable tolling is appropriate. Akins v. United States, 204 F.3d

1086, 1089 (11th Cir. 2000); Paulcin v. McDonough, 259 F. App'x 211, 213 (11th Cir. 2007).

Indeed, prison lockdowns appear to be a normal vicissitude of prison life. In particular,

equitable tolling does not appear to be appropriate in this instance where the lockdown was

instituted eleven days before the statute of limitations ran. (See doc. no. 8, p. 1.) Petitioner

does not contest that he had 354 days before this period to file his motion unimpeded.

Further, his ability to file his other twenty-three claims within the statute of limitations

impugns any argument that extraordinary circumstances stood in the way of him filing all of

his claims within a timely matter. Petitioner is not entitled to equitable tolling because he

simply wished to assert twenty-seven grounds of error rather than the copious twenty-three

originally filed.

Petitioner has also made no argument under the actual innocence exception nor could

he. Petitioner was caught with the $6,000 stolen from the bank, the GPS tracker police had

used to follow him, a jacket matching the description of the robber, and a handgun. Petitioner was also identified by two bank employees, and a surveillance video showed Petitioner robbing the bank. Rodger, 521 F. App'x at 831.

Under Federal Rule of Civil Procedure 15(c), an amended claim relates back to the date of the original pleading if it "arose out of the conduct, transaction, or occurrence set out or attempted to be set out -- in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). Rule 15(c) is narrow; it does not contemplate the addition of "an entirely new claim based on a different set of facts." Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003) (*per curiam*) (citing Pruitt v. United States, 274 F.3d 1315, 1318 (11th Cir. 2001) (*per curiam*)). Thus, "to relate back, an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial or sentencing proceeding." Farris, 333 F.3d at 1215 (citing Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000)). As the Eleventh Circuit has explained:

> The key consideration is that the amended claim arises from the same conduct and occurrences upon which the original claim was based. This may be the case even if one or both claims do not explicitly state supporting facts. When the nature of the amended claim supports specifically the original claim, the facts there alleged implicate the original claim, even if the original claim contained insufficient facts to support it. One purpose of an amended claim is to fill in facts missing from the original claim.

Dean v. United States, 278 F.3d 1218, 1222 (11th Cir. 2002) (*per curiam*). In other words, at issue here is whether the amended claims are merely an attempt to "flesh out" an original claim, or if the amended claims rely upon different facts.

Ground 15(e) asserts that Petitioner's appellate counsel was ineffective for failing to challenge the district court's alleged abuse of discretion in denying funds for a defense

investigator. In his original petition, Petitioner asserted a direct attack on the denial of funds for a defense investigator in Ground Thirteen and also asserted ineffective assistance of appellate counsel for failing to assert various alleged deficiencies with his trial, but not with the pretrial phase. In <u>Davenport</u>, 217 F.3d at 1344, the Eleventh Circuit unequivocally held that an ineffective assistance counsel claim included in an original petition does not keep the door open for more ineffective assistance challenges to various instances in the proceedings. <u>See</u> 217 F.3d at 1344 (disallowing challenges to counsel's failure to object to three grams of cocaine being part of the same course conduct, even though the original petition challenged counsel's failure to probe into the moisture content of the drugs). Thus, Petitioner's new grounds, dealing with appellate counsel's failure to challenge a pretrial ruling denying a defense investigator, relies on wholly different facts and occurrences than the challenges dealing with the occurrences at trial, such as the judge's failure to give a lesser-included offense instruction.

Petitioner's new ineffective assistance ground also does not relate back to the direct challenge to the denial of funds for a defense investigator. Both grounds raise challenges to fundamentally different conduct. Petitioner's new grounds focus on appellate counsel's actions on appeal, his review of the record, and his discussions with Petitioner in addition to the pretrial motion. In contrast, Petitioner's direct challenge only concerns the judge's actions in denying the motion and whether there was a legal basis for the motion. Thus, Petitioner's new Ground 15(e) does not relate back to Ground 13 in his original petition directly challenging the order denying funds for a defense investigator. Even considering this new

ground as timely, it is without merit for the reasons set forth in *infra* § II.D.1 which discusses the lack of prejudice by Petitioner's failure to bring this claim.

In contrast to Ground 15(e), there is even less of an argument for deeming Grounds 15(f), 15(g), and 22 as relating back to the original complaint. Ground 15(f) alleges that appellate counsel was deficient for not challenging the trial court's denial of Petitioner's motion to continue for medical reasons. Unlike Ground 15(e), no direct challenge to the trial court's ruling was included in the original petition, and indeed, was only added in the new memorandum as Ground 22. As mentioned above, only ineffective assistance of appellate counsel claims based on failure to challenge rulings at trial were included in the original petition. Thus, appellate counsel's failure to challenge a pretrial ruling is wholly apart from his failure to challenge rulings during the trial.

Similarly, Petitioner's challenge in 15(g) as to an insufficiency of the evidence defense is fundamentally different from any other ineffective assistance claims originally raised. The four claims originally brought against appellate counsel were:

1. Appellate counsel failed to raise the issue that the prosecutor improperly commented on his right not to testify in closing.

2. Appellate counsel failed to raise the trial judge's refusal to give a lesser-included offense instruction on unarmed robbery.

3. Appellate counsel failed to raise the prosecutor's improper referral to Petitioner as a "bank robber" during an objection.

4. Appellate counsel failed to raise the prosecutor's improper buttressing of Douglas Graves' testimony.

All of these challenges involve specific, isolated incidences at trial. In contrast, Petitioner's new challenge invokes the sum total of all evidence introduced at trial. Such a challenge

involves facts entirely different from the grounds listed above regarding specific events. Accordingly, Petitioner's new ground in 15(f) does not relate back and is untimely. Even if the Court considered this claim on the merits, it would not result in relief due to the tremendous amount of evidence against Petitioner as noted by the Eleventh Circuit. <u>Rodger</u>, 521 F. App'x at 831.

Finally, Ground 20 is wholly new and entirely unrelated to any claim that appears in Petitioner's original § 2255 motion. Indeed, Petitioner makes no argument regarding mental impairment at trial anywhere in his original § 2255 motion. Thus, this claim is also untimely. Even considering the merits of this claim, it was not brought on appeal and is procedurally defaulted.

In sum, Petitioner's claims in Grounds 15(e), 15(f), 15(g), and 20 are untimely, do not relate back to his original petition, and Petitioner is not entitled to equitable tolling.

### C. Petitioner's Grounds 1-6, 9-14, and 16-17 Were All Raised on Appeal and Decided Adversely to Him.

"Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>Mills v. United States</u>, 36 F.3d 1052, 1056 (11th Cir. 1994);; <u>Edwards v. United States</u>, 795 F.2d 958, 961 (11th Cir. 1986); <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981)   As the Seventh Circuit noted, "[W]e do not see how a federal prisoner – who must file his motion for relief under 2255 in the very court that convicted him – can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal." <u>White v. United States</u>, 371 F.3d 900, 902 (7th Cir. 2004).

Nor will the Court reconsider a previously raised claim where it is merely a re-characterization of an issue raised on direct appeal. <u>Nyhuis</u>, 211 F.3d at 1343**.** Thus, to obtain review in this § 2255 proceeding of a previously raised claim, Petitioner must show an intervening change in law since his appeal was decided and that a "complete miscarriage of justice" would occur if the claim is not considered in these proceedings. <u>Davis v. United States</u>, 417 U.S. 333, 346-47 (1974). Because Grounds 1-6, 9-14, and 16-17 are just new iterations of claims already brought on appeal and decided, he cannot re-litigate them in this § 2255 motion.

### 1. Grounds 1-4 and 10-12 All Deal with the Redacted Bank Surveillance Tape Which Was Brought on Appeal.

Grounds One through Four all allege that the government's use of a redacted bank surveillance tape showing the robbery was in error. Grounds One and Two allege that Petitioner was not given pretrial notice of the tape and was deprived of an opportunity to object to the tape. Ground Three alleges that Petitioner's due process rights were violated because the Court could not exercise discretion over the tape without notice of its redactions, and Ground Four alleges that Petitioner could not effectively cross-examine Douglas Graves without the full tape.

Grounds Ten through Twelve take a similar tact but all object to the fact that Petitioner was not allowed to introduce the full tape rather than concentrating on the prosecution's alleged dishonesty in redacting the tape. Ground Ten alleges the prosecutor made false statements in stating the redacted portions were irrelevant. Ground Eleven alleges Petitioner was deprived of an effective defense in not being allowed to play the full tape, and Ground

Twelve alleges that the District Judge mechanically applied the rules of evidence in violation of his Sixth Amendment rights in not allowing him to play the full tape.

On appeal, Petitioner argued in his *pro se* brief that (1) the District Court abused its discretion in not allowing him to introduce the full tape, (2) the prosecutor engaged in misconduct in introducing the redacted tape and soliciting the perjured testimony of Douglas Graves, and (3) he was denied his rights under the Confrontation Clause in not being allowed to introduce the full tape to cross-examine Graves. (Doc. no. 16-2, pp. 32-58.) In addressing these claims, the Eleventh Circuit stated the following:

> Rodger contends that the district court abused its discretion when it refused to allow him to introduce a surveillance videotape. At trial, the government introduced a redacted copy of a surveillance videotape containing a one-minute recording of still photographs that showed Rodger robbing a bank teller. Rodger did not object to the admission of that recording. Later in the trial, Douglas Graves testified that he saw the robber when he entered the bank. During his cross-examination of Graves, Rodger tried to introduce a longer version of the surveillance video given to him by the government during discovery, which showed images a few minutes before the robbery. Rodger claimed that his "unredacted" video would show that Graves could not actually have seen the robber because he was with a customer at that time. The government objected on the ground that there was no foundation for admitting the recording. The court sustained that objection, telling Rodger that he must "lay a foundation for getting the video recording into evidence." Rodger said "Okay. We'll do it later." The court then said, "Mr. Rodger, you have standby counsel. If you need to consult with him on any of these issues of evidence, that's why he's here." Rodger consulted with standby counsel, but he did not try to lay a foundation for the recording after that. Rodger had an opportunity to lay a foundation for admitting the recording, but he did not take advantage of it. There was no error.
>
> Rodger also contends that the prosecutor "engaged in misconduct" by introducing the redacted surveillance video, which Rodger claims was redacted to cover up perjured testimony by Graves. Neither the Federal Rules of Evidence nor our precedent supports Rodger's assertion that the government was required to introduce the entire surveillance recording just because it had given Rodger an unredacted version of that recording during discovery. There

is also nothing in the record that would suggest that the recording was redacted in order to cover up perjured testimony.

Rodger, 521 F. App'x at 832-33.

The Eleventh Circuit also noted that "[a] defendant does not have a right under the Confrontation Clause to use whatever evidence he wants without regard to the rules of evidence." Id. at n. 5. As shown above, Petitioner's Ground One through Four and Ten through Twelve are all recast claims that have already been addressed by the Eleventh Circuit. The Eleventh Circuit found no error by the Court in excluding the full tape because Petitioner failed to establish a foundation. It also found no misconduct by the prosecutor in introducing a redacted tape and that Petitioner's Sixth Amendment rights had not been violated by the Court's application of the Federal Rules of Evidence. Petitioner cannot try and reassert such claims just by putting a Constitutional gloss upon them. See Nyhuis, 211 F.3d at 1343. Nor can he reassert such claims by adding minor immaterial facts. Id. The Eleventh Circuit found no error in the introduction of the redacted tape and the exclusion of the full tape, and thus, these grounds are procedurally barred.

Even if these claims were not decided on direct appeal, which they were, they are procedurally defaulted. These claims were clearly available at the time of appeal as shown by Petitioner's assertion of other similar claims involving the bank surveillance tape. In addition, Petitioner has not asserted cause or prejudice for failing to assert these claims on appeal nor can he show actual innocence. Accordingly, to the extent these claims were not brought on appeal, they are procedurally defaulted.

## 2. Grounds 5, 6, and 13 Concern the Court's Denial of Petitioner's Motions for Sharon Kline's "Proof Work" and Subpoenas for Unnamed Deputies, All of Which Were Decided on Appeal.[2]

Ground Five alleges error in the Court's denial of Petitioner's motion for Sharon Kline to bring her "proof work" to trial while Ground Six alleges error in the Court's denial of Petitioner's motion to subpoena numerous unnamed sheriffs' deputies. Ground Thirteen reiterates Ground Six's allegations but asserts that the denial violated his right to prepare for trial and also adds that denial of funds for a defense investigator violated his right to prepare for trial. Respondent argues that all of these arguments were raised and decided on appeal.

As to the "proof work," Petitioner alleges that a discrepancy existed between the amount stolen and the amount found in his car and argued before trial that Kline's "proof work" from her drawer count would show the discrepancy. Petitioner brought the same claim on appeal in his *pro se* brief. (Doc. no. 16-2, p. 60). The Eleventh Circuit addressed the argument and found no error in the Court's denial of Petitioner's request. Accordingly, this claim is procedurally barred.

Regarding the claim as to the subpoenas for numerous unnamed Columbia County Sheriff's deputies, Petitioner made the same argument on appeal, concentrating on one specific deputy with badge number 92940. (Doc. no. 16-2, p. 59.) Petitioner contends that the Eleventh Circuit did not address this claim. However, Petitioner's argument was addressed head on, with the Eleventh Circuit stating the following:

> The district court did not abuse its discretion in denying Rodger's request to subpoena the unnamed deputy under Rule 17(b). Rule 17(b) provides for the

---

[2] The Court discusses the second part of Petitioner's claim in Ground Thirteen regarding denial of funds for a defense investigator *infra* § II.D, finding it to be procedurally defaulted.

issuance of a subpoena for a "named witness." That rule "is clearly not a discovery device." Id. at 952. Rodger asserts that the government and the district court should have assisted him in determining the name of the deputy. The government, however, is not obliged to "identify defense witnesses." United States v. Griggs, 713 F.2d 672, 673 (11th Cir.1983). Rodger even conceded during an evidentiary hearing that the government had provided him with copies of all the evidence in its files. Rodger also agreed with the district court that it was not the role of the United States Marshals Service to be his investigator.

Rodger, 521 F. App'x at 831. Thus, Petitioner's contention of error in the denial of the subpoenas was decided on appeal and cannot be re-litigated. To the extent that the Eleventh Circuit did not address the other eleven deputies for whom Petitioner desired subpoenas, its reasoning is equally applicable to those deputies as well.[3] Thus, there was no error in the Court's denial of his motion to subpoena unnamed witnesses.

### 3. Ground 9 Regarding the Prosecutor's Alleged Introduction of Perjured Testimony by Douglas Graves Was Decided on Appeal.

In Ground 9, Petitioner alleges the prosecutor engaged in misconduct by introducing the testimony of Douglas Graves because the prosecutor knew the testimony was false. Petitioner raised the same exact claims on appeal. (Doc. no. 16-2, pp. 39-44.) In arguing that this claim is not barred, Petitioner essentially contends that the Eleventh Circuit was in error and misapplied the materiality standard. Under Petitioner's peculiar argument, the fact that Eleventh Circuit did not hold it was "clearly proven" that Petitioner robbed the bank is fatal, despite the Eleventh Circuit's statement that there was strong independent evidence of guilt outside of Graves' testimony. (Doc. no. 9-3, pp. 31-34.)

---

[3] Petitioner's *pro se* brief is largely unclear as to whether he is arguing with regards to just the one deputy or all deputies he wished to subpoena. (See doc. no. 16-2, p. 59.)

Petitioner's arguments can be construed as nothing more than an attempt to have this Court overturn the Eleventh Circuit's opinion on appeal. This Court clearly has no such authority, and Petitioner's claims, which were brought on appeal and directly addressed by the Eleventh Circuit, are barred.

**4. Ground 14 Rehashes the Same Claims with Regards to the Bank Tape, Subpoenas, and "Proof Work," All of Which Were Denied on Appeal.**

Petitioner's claims in Ground 14 are an amalgamation of claims raised in other Grounds regarding the denied subpoenas, Kline's "proof work," and the full bank tape, which are also addressed above. Petitioner labels this claim as asserted under the Fifth and Sixth Amendment and argues that the "Eleventh Circuit did not address this Constitutional claim in its opinion." (Doc. no. 9-3, p. 54.) As discussed above, all three of these claims and their underlying factual bases were discussed at length by the Eleventh Circuit and denied. The fact that Petitioner has now labeled them as relevant to the Fifth and Sixth Amendments does not absolve Petitioner of the fact that they have already been decided on appeal. See Nyhuis, 211 F.3d at 1343. Thus, Ground 14 is also procedurally barred.

**5. Grounds 16 and 17 Both Address the Second Jury Note and the Court's Decision to Keep It Sealed Which Was Decided on Appeal.**

Ground 16 alleges that Petitioner's Fifth and Sixth Amendment rights were violated when the second jury note was kept sealed, and he was not allowed to address it at trial. (Doc. no. 9-3, p. 78.) Ground 17 brings a similar claim in alleging a due process error on appeal by the Court not unsealing the note and allowing his appellate attorney to use the contents to fully present the issue. (Id. at 77-79.) Respondent contends that this issue was brought and decided on appeal. On appeal, Petitioner's counsel argued that that the Court

abused its discretion in refusing to unseal the second jury question. (Doc. no. 16-1, pp. 30-38.)

> In regards to the second jury question, the Eleventh Circuit stated the following:

> Rodger also contends that the district court erred by refusing to disclose to him the contents of the jury's second question. That argument is foreclosed by our decision in <u>United States v. Rodriguez</u>, 765 F.2d 1546, 1554 (11th Cir.1985), which held that there was "no prejudicial error in the [district] court's refusal to answer the [jury's] question or disclose it to defense counsel" when "the verdict had already been reached." The court reasoned that "[a]nswering the question at that point would have been futile." <u>Id</u>.

> Rodger argues that this case is distinguishable from <u>Rodriguez</u> because in this case, unlike in <u>Rodriguez</u>, it is impossible to know whether the district court acted promptly in notifying the parties of the question. We disagree. The reconstructed record shows that the court did act promptly in trying to answer the question, but the jury reached a verdict before the question could be answered. The district court did not err in refusing to disclose the jury's second question.

<u>Rodger</u>, 521 F. App'x at 834. The Eleventh Circuit has already unequivocally addressed Petitioner's arguments regarding the second jury question in finding no error in the refusal to disclose its contents. Petitioner's new spin on the argument that appellate counsel was hindered by the nondisclosure is directly foreclosed by the Eleventh Circuit's holding that the jury's verdict rendered the content of the question and any possible response irrelevant. Because this claim is the same one that has been raised an addressed by the Eleventh Circuit, Grounds 16 and 17 are procedurally barred. (<u>See</u> doc. no. 16-4, pp. 12-14.)

### D. Ground 13's Claim Regarding the Defense Investigator Is Procedurally Defaulted.

A prisoner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." <u>Brown v. United States</u>, 720 F.3d 1316, 1333 (11th Cir. 2013)

(quoting United States v. Frady, 456 U.S. 152, 166 (1982)). Generally, where a petitioner seeks collateral relief based on trial errors to which no contemporaneous objection was made at trial or on direct appeal, "it will be procedurally barred in a § 2255 challenge." Frady, 456 U.S. at 167-68; United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

Petitioner's claim regarding the denial of funds for a defense investigator in Ground 13 was absent in both the brief filed by appellate counsel and in Petitioner's *pro se* brief. (See doc. nos. 16-1, 16-2.) Although Petitioner claims that this argument was made in his *pro se* brief, Petitioner only asserts error in the Court denying his subpoenas and does not mention the motion for a defense investigator. (See doc. no. 16-2, pp. 44-45.) Petitioner also claims that this issue was raised by the Eleventh Circuit, and thus, the claim is not procedurally barred. However, the Eleventh Circuit merely stated that the United States Marshal was not required to be Petitioner's investigator in finding the names of the Columbia County deputies regarding the subpoenas, never addressing his defense investigator motion because it was not raised. Rodger, 521 F. App'x at 831. Accordingly, this claim has been procedurally defaulted by Petitioner.

**1. Petitioner Has Not Alleged Cause to Justify Federal Review of His Defaulted Claim, and the Miscarriage of Justice Exception Does Not Apply.**

Failure to raise a claim on direct appeal constitutes a default and to overcome a procedural bar, Petitioner must show both (1) cause excusing his procedural default, and (2) actual prejudice resulting from the errors of which he complains.  Brown, 720 F.3d at 1333 (citation omitted).  "Cause" requires a showing of some external impediment preventing counsel or Petitioner from raising the claim previously.  See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions."  Frady, 456 U.S. at 170.

Here, Petitioner's asserts that the Court's erroneous ruling was the cause for his default.  (See doc. no. 9-3, p. 48.)  Petitioner fails to acknowledge that the Court in no way prevented him from bringing this claim on appeal with the numerous other claims brought and addressed by the Eleventh Circuit.  Nor can Petitioner show prejudice by his failure to bring the defense investigator claim on appeal.  The Court's reasoning for denying the investigator funds was that Petitioner simply wished to have an investigator to act as a surrogate for counsel and perform the tasks that counsel normally would.  CR 109-40, doc. no. 36, p. 6.  Petitioner had knowingly and voluntarily waived his right to counsel, and thus was not entitled to an investigator.  Id.  In making this ruling, the Court did not err.

Further, in his original motion for a defense investigator with the Court, Petitioner did not provide the current argument he now makes for having an investigator—identifying the unnamed sheriff's deputies and securing Sharon Kline's "proof work." Id., doc. no. 24. Thus, Petitioner cannot show prejudice by denial of the motion based on arguments he did not make to the Court. Nor can his later arguments in a motion to dismiss based on the Speedy Trial Act be construed as a request for a defense investigator under 18 U.S.C. § 3006A(e). Id., doc. no. 161, p. 10. In sum, Petitioner cannot show cause and prejudice for failure to bring his claim relating to investigative services on appeal.

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice." Jones, 436 F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). The narrow fundamental miscarriage of justice exception encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime. Murray, 477 U.S. at 496. Given that Petitioner was literally caught red handed, matched the description of the robber, and was identified by two bank employees, Petitioner can in no way show actual innocence.

Accordingly, Petitioner's claim in Grounds 13 regarding the funds for a defensive investigator has been defaulted and provides no basis for federal habeas relief.

**F.    Petitioner Cannot Demonstrate Ineffective Assistance of Appellate and Standby Counsel in Grounds 15 and 18.**

**1.    Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003). Petitioner must show that counsel was constitutionally ineffective under the two prongs of <u>Strickland</u> by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." <u>Strickland</u>, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

Further, an attorney is not required under the Constitution to raise every non-frivolous issue on appeal. See Jones v. Barnes, 463 U.S. 745, 754 (1983) ("Nothing in the Constitution or our interpretation of that document requires" an appellate attorney "to raise every 'colorable' claim suggested by a client."). To the contrary, the very mark of an effective attorney on appeal is to select only the "most promising issues for review." Id. at 752-53. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible or at most on a few key issues." Id. at 751-52. "A brief that raises every colorable issue runs the risk of burying the good arguments . . . in a verbal mound made up of strong and weak contentions." Id. at 753. If courts were to "second-guess reasonable

professional judgments and impose on . . . counsel" a duty to raise every conceivable argument, it would "disserve the very goal of vigorous and effective advocacy." <u>Id</u>. Thus, where counsel has selected certain arguments to raise on appeal, a generally high bar exists to demonstrate that the winnowing process constitutes deficient performance. <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000) (citing <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.")).

> ### 2. Petitioner Has Not Shown Entitlement to Relief Based on Ground 15(a) that Appellate Counsel Failed to Raise the Issue of the Prosecutor Improperly Commenting on His Right Not to Testify.

Petitioner argues in Ground 15(a) that the prosecutor improperly commented on his right to not testify in closing and that appellate counsel was ineffective for failing to raise this issue. (Doc. no. 9-3, p. 59.) Respondent counters that the statement was not a comment on his Fifth Amendment right but an assertion that he failed to counter evidence as a *pro se* defendant acting as his own counsel. (Doc. no. 16, p. 20.)

> The statement made by the prosecutor that Petitioner complains of is as follows:
>
> You have to ask yourself: In the defendant's argument, he never addressed how that coat with the gun and the money got into his trunk. And you have to answer that question. And the clear, obvious answer, the only answer, to that question is that he put it there after he robbed the bank.

(Doc. no. 191, p. 412.) The prosecutor's statement, as clearly reflected above, is directed at Petitioner's failure to explain or address certain incriminating evidence in his arguments as a *pro se* defendant. The statement does not comment on Petitioner's Fifth Amendment right to

not testify or insinuate that Petitioner had a burden of offering exculpatory evidence on his own behalf.

Further, even if the comment was in error, which it was not, Petitioner suffered no prejudice by appellate counsel's failure to challenge it on appeal. A prosecutor's misconduct in attempting to shift the burden of proof must be "so pronounced and persistent that it permeates the entire atmosphere of the trial" to mandate reversal. See United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992). Unlike Simon, where the prosecutor repeatedly harped on the defendant's failure to produce a .45 caliber gun matching the murder weapon for inspection, the prosecutor's comment above is one isolated comment given to the jury in closing. One comment can hardly be said to be so persistent as to infect the entire trial with error and deprive Petitioner of his right to be proven guilty beyond a reasonable doubt. See Simon, 964 F.2d at 1086. Because the prosecutor's comment did not mandate reversal, there was no prejudice by appellate counsel's failure to raise it on appeal.

> **3.    Appellate Counsel was not Ineffective for Failing to Challenge the Court's Refusal to Give a Lesser Included Instruction for Unarmed Robbery as Alleged in Ground 15(b).**

In Ground 15(b), Petitioner alleges that the trial court erred in removing from the jury instructions the lesser included offense instruction for unarmed bank robbery and that appellate counsel was deficient for failing to raise this issue on appeal. (Doc. no. 9-3, p. 61.) Respondent contends that Petitioner failed to object to removal of the instruction and removal of the instruction is clearly not plain error. (Doc. no. 16, pp. 25-26.)

First, Petitioner failed to object to the removal of the instruction at trial. When asked if he had any objections after the Court announced that it was removing the lesser included

offense charge, Rodger simply responded that he had "objections to the possession charge," which was an instruction as to the legal definition of constructive and actual possession. (Doc. no. 191, p. 361). "[B]efore an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" Johnson v. United States, 520 U.S. 461, 466-67 (1997). Because failure to give the lesser included instruction was not plain error, appellate counsel was not deficient in failing to raise nor did Petitioner suffer any prejudice from the argument's absence.

First, the failure to give the instruction was not plain error. The uncontroverted testimony of Latoya Johnson, the teller robbed by Petitioner, was that Petitioner was holding a gun near his chest when he asked for the money from the drawer. (Doc. no. 191, p. 5.) Latoya Johnson also identified the gun found in Petitioner's coat pocket in his trunk as the one used in the robbery. (Id. at 20.) Petitioner did not challenge these statements on cross-examination, instead focusing on Johnson's description of the robber and her later identification at the show-up. (Id. at 21-30.) Further, Petitioner's closing arguments never contend that he did not use a gun but only that he was a victim of misidentification. (Id. at 386-412) An abuse of discretion in regards to a lesser included offense instruction may occur where the evidence would permit a rational jury to find the defendant guilty of the lesser offense and not the greater. United States v. Gutierrez, 745 F.3d 463, 470 (11th Cir. 2014) (citation omitted). Here, Petitioner never controverted the eyewitness testimony that a gun

was used.  Instead, the jury was presented with a binary choice: either Petitioner committed an armed bank robbery or was misidentified as the robber.  Thus, on the evidence presented at trial, the jury could have only rationally found Petitioner guilty of armed robbery, and the Court committed no error.

Even if failure to give the instruction was error, which it was not, appellate counsel was not deficient in not raising it nor did Petitioner suffer prejudice from it not being presented on appeal.  Here, the absence of the instruction on unarmed bank robbery did not seriously affect the fairness, integrity, or public reputation of judicial proceedings because considerable evidence supported Petitioner's conviction for armed robbery.  See Johnson, 520 U.S. at 470 (upholding perjury conviction despite materiality not being submitted to jury because evidence supporting materiality was overwhelming).  As noted above, Latoya Johnson's testimony that she was robbed at gunpoint was uncontroverted and supported by her identification of the same gun from Petitioner's jacket.  The fact that more evidence does not support the use of a gun during the robbery does not undermine Johnson's clear testimony or the gun found in the jacket.  (See doc. no. 9-3, p. 64) (arguing that other witnesses did not mention a gun and the video did not show a gun).  Further supporting the armed robbery conviction is the bait money found in the pocket opposite of the gun and followed by GPS from the bank.  In sum, Petitioner's appellate counsel was not ineffective for choosing not to raise this argument on appeal nor did Petitioner suffer any prejudice from his decision to omit such a claim.

4. **Appellate Counsel was not Ineffective for Failing to Challenge the Prosecutor's Alleged Introduction of 404(b) Evidence as Alleged in Ground 15(c).**

Petitioner alleges that appellate counsel was ineffective for not raising on appeal the prosecutor's reference to him as an armed bank robber during an objection at trial. (Doc. no. 9-3.) Respondent contends that the reference was not to prior robberies by Petitioner but to the armed bank robbery for which he was on trial.[4] (Doc. no. 16, p. 28.)

The exchange at issue is as follows:

MS. RHODES: Your Honor, we would offer Exhibit 51 at this time.

THE DEFENDANT: I'm going to object. What is the relevance of that?

THE COURT: Actually, I'd like to know, too.

MS. RHODES: Your Honor, the relevance is that these are latex gloves found in the car of an **armed bank robber** who claims that he left no -- that he's made a big issue about fingerprints in the case. And I believe there is an inference to be drawn, that perhaps he can be wearing gloves. It's not a common item to be carrying round in a vehicle, especially a rental vehicle. It's relevant that it was in the car that he was captured in, your Honor. I think anything that was in that vehicle could be made relevant to his capture and arrest, if there's an inference to be drawn from its presence.

(Doc. no. 191, p. 348.) First, Petitioner cannot show that this was an attempt to introduce evidence of prior bad acts in contrast to a reference to the bank robbery for which he was on trial. The jury had no knowledge of Petitioner's nine prior bank robberies, and there is simply no reason to believe the jury would have inferred from one offhand comment that Petitioner was a serial bank robber. Further, Petitioner failed to object to the comment or move to strike during trial. When responding to the comment, Petitioner merely stated that he wanted to

---

[4] Petitioner has nine prior convictions for armed bank robberies. (Doc. no. 251, p. 32.)

remove his objection and that he could explain the presence of the gloves.  (Id. at 349.)  Thus, Petitioner's claim as to the 404(b) evidence would be reviewed under a plain error standard on appeal.

Appellate counsel was not deficient for challenging the comment by the prosecutor nor did Petitioner suffer any prejudice from appellate counsel's decision.  As stated above, the prosecutor's comment was simply a legal argument as to the relevance of certain evidence, not an attempt to introduce character evidence.  Thus, appellate counsel was not ineffective for choosing not to bring such a weak argument.  Further, appellate counsel would not have been able to show, even if the comment was error, that the error was harmless.  Reversal is warranted "only if [the error] resulted 'in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict.'"  United States v. Phaknikone, 605 F.3d 1099, 1109 (11th Cir. 2010).  Overwhelming evidence of guilt is one factor that may be considered in finding harmless error.  Id.  As discussed above, the evidence that Petitioner committed the armed robbery is overwhelming.  Given the presence of such convincing evidence, the offhand comment by the prosecutor, even if it was error, cannot be said to have seriously affected the jury's verdict.

Accordingly, Petitioner's ineffective assistance of counsel claim as to the prosecutor's alleged introduction of 404(b) evidence is without merit and does not merit habeas relief.

**5.    Appellate Counsel was not Ineffective for Failing to Challenge the Prosecutor's Alleged Improper Buttressing of Douglas Graves' Testimony as Alleged in Ground 15(d).**

Petitioner contends in Ground 15(d) that appellate counsel was ineffective for failing to raise the prosecutor's improper buttressing of Latoya Johnson's testimony, which Petitioner

claims is perjured, during closing arguments. (Doc. no. 9-3, p. 67.) Respondent argues that the prosecutor did not invoke the government's reputation in closing arguments and that the Court's instructions would have cured any harm. (Doc. no. 16, p. 29.)

> The statement Petitioner complains of is the following:

> The defendant just told you that he has always worn his mustache and beard the way it is before you today. That would be always except for the day that he committed this armed bank robbery. Because you will see yourself that his facial hair on that day was light, and lighter than it is today as Latoya Johnson told you. And you can see that it is faint. And so from a distance, it may not have been as visible to others, except to Latoya Johnson who saw him across the counter from her.

(Doc. no. 191, p. 411.) The prosecutor does nothing more than argue reasonable inferences that the jury could draw from the evidence. The mere fact that Petitioner appears to believe, against the weight of all evidence in this case, that Latoya Johnson was perjuring herself does not prevent the prosecutor from arguing the credibility of her own witness and her statements given under oath. Because the prosecutor in no way invoked the government's reputation in this statement, Petitioner's argument is frivolous and appellate counsel was not ineffective for failing to raise it. United States v. Lopez, 590 F.3d 1238, 1257 (11th Cir. 2009) (stating that prosecutor can comment on credibility of witnesses if not personally vouching or invoking the government's reputation). To the extent Petitioner may be implying that the prosecutor engaged in misconduct by relying on perjured testimony, Petitioner has produced no evidence that the prosecutor knew the testimony was false and appellate counsel was not ineffective for not asserting such an unsubstantiated claim.

### 6. Petitioner's Claim in Ground 18 Regarding Standby Counsel's Alleged Conflict of Interest and Ineffectiveness is Without Merit.

Petitioner alleges in Ground 18 that his standby counsel, Jason Troiano, had a conflict of interest due to his friendship with the prosecutor and his position as an associate Columbia County Magistrate Judge. (Doc. no. 9-3, pp. 82-83.) Petitioner alleges various instances of erroneous advice given by his standby counsel which Petitioner ties to the alleged conflicts. (Id. at 83-85.) Petitioner also asserts that Mr. Troiano failed to include a request for pertinent information regarding a black male born in 1947 in a subpoena to Andrea Hawes. (Id. at 85.)

First, Petitioner attempts to assert a right, the Sixth Amendment right to counsel, which he knowingly and voluntarily waived. CR 109-040, doc. nos. 11, 19. Indeed, Petitioner has insisted on representing himself throughout his criminal proceedings, including filing a *pro se* brief on appeal and has never asserted that he unknowingly waived his right to counsel. "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of "effective assistance of counsel." Faretta v. California, 422 U.S. 806, 834, (1975); see Simpson v. Battaglia, 458 F.3d 585, 597 (7th Cir. 2006) ("[T]he inadequacy of standby counsel's performance, without the defendant's relinquishment of his Faretta right, cannot give rise to an ineffective assistance of counsel claim under the Sixth Amendment."); United States v. Morrison, 153 F.3d 34, 55 (2d Cir. 1998) (finding no constitutional claim for ineffectiveness of standby counsel where defendant maintained control over his own defense.) Because Petitioner waived his right to counsel, he cannot now complain that standby counsel was ineffective.

Even if Petitioner had not waived the right that he now asserts, Petitioner did not suffer prejudice from Mr. Troiano's alleged erroneous advice. Petitioner asserts: Mr. Troiano (1) refused to investigate the names of the Columbia County Sheriff's Deputies, (2) erroneously advised him the U.S. Marshal would investigate the names of the deputies for him; (3) incorrectly advised him that the prosecutor would stipulate to the admissibility of the entire bank surveillance tape; (4) conspired with the prosecutor to deny him the opportunity to play the full tape; (5) failed to advised him on potential objections raised in Grounds 15(a)-15(d); and (6) failed to subpoena pertinent information from Andrea Hawes. (Doc. no. 9-3, pp. 83-85.)

First, Petitioner has wholly failed to show any conflict by his standby counsel other than his naked assertions. A defendant must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance. Pegg v. United States, 253 F.3d 1274, 1277 (11th Cir. 2001). "In assessing whether a conflict existed, we must be convinced that the conflict is actual, not merely hypothetical or speculative." Buenoano v. Singletary, 74 F.3d 1078, 1086 (11th Cir. 1996). A conflict exists when counsel has inconsistent interests. United States v. Novaton, 271 F.3d 968, 1010 (11th Cir. 2001). Here, Mr. Troiano's alleged friendship and prior professional relationship with the prosecutor is not an "inconsistent interest." Correll v. Sec'y, Dep't of Corr., 932 F. Supp. 2d 1257, 1288 (M.D. Fla. 2013) (friendship and professional relationship not a conflict). Because Mr. Troiano's ability to fully defend Petitioner was not inconsistent with any professional relationship with the prosecutor, this claim does not provide a basis for relief.

Mr. Troiano's position as a Columbia County Magistrate Judge was also not a conflict of interest. An assistant magistrate judge is not a member of law enforcement in any capacity, and nothing suggests that Mr. Troiano has any involvement in a case, either as a lawyer or judge, that posed a conflict of interest with Petitioner.

As to Petitioner's first two allegations regarding the names of the Columbia County Sheriff's Deputies, Mr. Troiano was not ineffective for failing to secure these names for Petitioner nor did Petitioner suffer any prejudice from failing to discover their identity or have them testify at trial. Petitioner asserts one of the deputies would have testified to talking to Petitioner about the bank robbery at the roadblock on I-20, checking Petitioner's driver's license, and allowing him to move through the roadblock because he did not fit the description of the robber. (Doc. no. 9-3, p. 24.) Petitioner's unsupported assertions are the only evidence of any such possible testimony. Regardless, the record reveals that Mr. Troiano did attempt to secure the names of the deputies through a motion under Fed. R. Crim. P. 17(c). CR 109-040, doc. no. 96. Even if further efforts were merited by Mr. Troiano as standby counsel, Petitioner suffered no prejudice by the absence of the identities of the deputies. As stated above, Petitioner has introduced no evidence other than his unsupported assertions that one of the deputies' testimony would be favorable, and the overwhelming evidence in this case would have muted any impact of testimony that Petitioner circumvented the roadblock.

Regarding Petitioner's claims about the bank tape, any allegation of conspiracy among Mr. Troiano and the prosecutor is wholly unsupported, and Petitioner was not prejudiced by any erroneous advice by Mr. Troiano regarding the surveillance tape. At trial, Petitioner

attempted to introduce the full surveillance tape which was objected to by the government for lacking a foundation. CR 109-049, doc. no. 191, p. 61. After the Court sustained the objection, "Rodger consulted with standby counsel, but he did not try to lay a foundation for the recording after that. Rodger had an opportunity to lay a foundation for admitting the recording, but he did not take advantage of it." Rodger, 521 F. App'x at 832. Thus, any alleged error by Mr. Troiano regarding the tape could have been cured at trial had Petitioner actually attempted to lay a foundation for the surveillance tape. Petitioner neglected to do so, and Petitioner cannot now blame standby counsel for what amounts to a failure on his end in acting as his own counsel.

Petitioner also lays blame at the feet of Mr. Troiano for the same trial court errors and lack of objections thereto raised in Grounds 15(a)-(d). The Court has amply addressed the lack of merit contained in these claims *supra* § II.F.2 -5, and any allegation of ineffectiveness by Mr. Troiano fails for the same reasons.

Finally, Petitioner alleges Mr. Troiano was ineffective for failing to accurately transcribe his request for information regarding a black male born in 1947 to Andrea Hawes, a training officer at the 911 center in Columbia County. (Doc. no. 9-3, p. 85.) First, there is simply no reason to believe that Andrea Hawes, a dispatcher at a 911 center, would have any documents relevant to a black male born in 1947 mentioned in the radio logs. Petitioner also has not pointed out how the documentation relevant to this black male born in 1947 would have aided in his defense. Presumably, Petitioner thinks that this black male is a reference to him and shows that he was not identified as the robber at the roadblock. CR 109-040, doc. no. 261, p. 30 ("The time and everything fits the time when I was interviewed. And that's the

information that I'm seeking.") Nonetheless, this evidence would not have aided him at trial. Given where Petitioner was ultimately stopped and the evidence from the GPS tracker, it would have been clear to the jury that Petitioner made it through the roadblock. CR 109-040, doc. no. 191, p. 103. Any information regarding his encounter at the roadblock would have been duplicative and done little to negate the evidence found in his trunk. Accordingly, Petitioner's claim regarding the subpoena to Andrea Hawes is without merit.

In sum, Petitioner's ineffective assistance and conflict of interest claims against Mr. Troiano are without merit. Petitioner waived his Sixth Amendment right to counsel and cannot now complain about his representation at trial. Further, Petitioner has failed to show a conflict by Mr. Troiano or that he was actually ineffective. Accordingly this ground does not afford Petitioner habeas relief.

### G. Petitioner's __Brady__ and __Giglio__ Claims in Grounds 7 and 8 Regarding the FBI Documents are Without Merit.

Petitioner argues FBI documents he received pursuant to a FOIA request constitute __Brady__ material not disclosed to him by the government during discovery. (Doc. nos. 25, 26.) According to Petitioner, these documents show $12,604 was stolen from the bank but only $6,300 was recovered from him and returned to the bank. (__Id.__) Petitioner argues this evidence (1) undermines Latoya Johnson's statement that approximately $6,300 was taken from her drawer; and (2) supports his theory that on the day of the robbery, another black male and a black female committed the robbery and threw half of the stolen money out of their car at mile-marker 180 on I-20, where Petitioner apparently picked up the money with

the GPS tracker and was tracked and stopped about twenty miles further west. (See doc. no. 26, p. 11.)

First, the toehold on which Petitioner bases his argument is nonexistent. Petitioner alleges that one of the FBI documents shows $6,300 was not returned to the bank. Petitioner gathers this from a row marked "PropRet:" which has an "N" next to it. (See doc. no. 25, p. 10.) Immediately below this is another row marked "TotLoss:" with "000006300" beside it. (Id.) Petitioner has gathered from these two pieces of information that $6,300 was not returned to the bank and thus, the bank lost $6,300. (See doc. no. 26, p. 6.) Petitioner entirely ignores the other FBI document showing $6,304 in cash was taken from the bank and $6,304 in cash recovered by law enforcement. (See doc. no. 25, p. 8.) Contrary to Petitioner's assertions, the only logical reading of the FBI document is that the $6,300 refers to the total amount stolen. Petitioner's interpretation goes entirely against the testimony of all witnesses in the case and the FBI's other documentation. Most importantly, the amount that Petitioner continually refers to as stolen from the bank, $12,604, is completely absent from the FBI document and mentioned nowhere in the record other than in his bare assertions.

Petitioner's reliance on the Eleventh Circuit's statement also does not help him. Petitioner cites the following passage from the Eleventh Circuit's decision in support of his theory that a total of $12,604 was stolen and only $6,300 was returned to the bank:

> At trial, however, Kline testified that when the stolen money was returned, it was about $6,000 less than the amount Johnson had reported stolen from her teller drawer. So, the district court did not abuse its discretion in denying Rodger's request.

Rodger, 521 F. App'x at 832. Contrary to Petitioner's assertions, the Eleventh Circuit did not go on an independent fact finding mission. The Eleventh Circuit cited as support for this passage the following testimony:

> MR. INMAN: About how much money was returned to you that day?
>
> SHARON KLINE: A little over 6,000.

(Doc. no. 191, p. 337.) Here, Ms. Kline simply stated that approximately $6,000 was returned that day, not that there was a disparity between the amount stolen and the amount returned.

Finally, even if the FBI documents actually did show a disparity in the amount stolen and the amount returned, Petitioner has wholly failed to demonstrate an actual Brady violation. The nondisclosure by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 87 (1963). There are three components of a true Brady violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Evidence is material so as to establish prejudice only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985); see also Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1354 (11th Cir. 2004).

41

Here, the alleged disparity in the amount of money reported stolen would have been immaterial to the jury's determination of guilt. This evidence is only minutely exculpatory because it does not explain how the money with the GPS tracker, which Petitioner alleges is only half the money stolen from the bank, ended up in Petitioner's coat pocket in the trunk of his car. Nor does it explain the presence of the gun, identified by Latoya Johnson as the one used in the robbery, nor quell the infinitely more likely scenario that the money was present in his trunk because he stole it from Latoya Johnson at gunpoint. Because Petitioner's theory is too preposterous, the FBI documents would not have likely changed the outcome and do not constitute actual <u>Brady</u> material.

As to the second part of this claim, Petitioner contends the FBI documents are <u>Giglio</u> material because they contradict Latoya Johnson's statements as to the amount stolen from the bank. The particular exchange Petitioner refers to was the following:

MS. RHODES: Do you know how much money he got that day?

LATOYA JOHNSON: It was a little over 6300.

MS. RHODES: Did that -- do you know if that included the bait money?

MS. JOHNSON: I'm not sure.

According to Petitioner, this was perjured testimony by Latoya Johnson. (<u>See</u> doc. no. 26, p. 13.) "To establish a <u>Giglio</u> claim, a habeas petitioner must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment." <u>Trepal v. Sec'y, Florida Dep't of Corr.,</u>

684 F.3d 1088, 1107-08 (11th Cir. 2012) (quoting <u>Guzman v. Sec'y, Dep't of Corr.</u>, 663 F.3d 1336, 1348 (11th Cir. 2011)).

Here, Petitioner has failed on the first prong of the <u>Giglio</u> analysis because he has failed to show that Latoya Johnson's testimony was actually false. As explained above, the only evidence Petitioner has presented to substantiate this claim is an "N" notated on one FBI document. (Doc. no. 25, p. 10.) Petitioner's contrived interpretation of this document goes against all of the voluminous before the Court. Petitioner has also not shown that the prosecutor knew or should have known of any alleged false testimony. <u>See</u> <u>Ford v. Hall</u>, 546 F.3d 1326, 1331 (11th Cir. 2008) (finding that a <u>Giglio</u> claim only exists when the prosecutor knew or should have known of the perjury). The FBI document gives no indication that $12,604 was stolen rather than $6,304, and the prosecutor would not be at fault for failing to read the tea leaves as Petitioner has.

Even assuming that Petitioner has met the first prong of the <u>Giglio</u> analysis, which he actually falls far short of, Petitioner has not shown that testimony by Latoya Johnson as to the amount stolen is material. First, the Court notes that the materiality standard differs among <u>Brady</u> and <u>Giglio</u> claims. <u>Trepal</u>, 684 F.3d at 1108. To show materiality under <u>Brady</u>, Petitioner must show that there is a reasonable probability that the undisclosed evidence would have changed the result of the proceeding. <u>Id.</u> To show materiality under <u>Giglio</u>, Petitioner must show a reasonable likelihood that the false testimony could have affected the judgment of a jury. <u>Id.</u> Even under this more lenient standard, Latoya Johnson's testimony as to the amount stolen would not be material. As explained before, the evidence against Petitioner at trial was extensive. Johnson's testimony as the amount stolen would not negate

43

the evidence that Petitioner was caught red handed with money from the bank. Petitioner's efforts to explain away this evidence are at the very least, unconvincing. Though the disparity in the amount stolen might somewhat impugn Johnson's identification, her identification is still corroborated by the bank tape, another employee's identification, and the jacket and gun found in Petitioner's car. See Rodger, 521 F. App'x at 833. ("[T]he surveillance video showed Rodger robbing the bank; and Roger was caught red-handed fleeing with the bait money less than two hours after the robbery.") Accordingly, Petitioner's allegations of a Giglio violation do not afford him relief because he cannot show that Johnson's testimony was perjured or that the alleged falsity was material to the jury's determination.

In sum, Petitioner's arguments under Brady and Giglio as to the FBI documents are without merit. Petitioner has not shown that the FBI documents demonstrate $12,604 was stolen from the bank. Petitioner also has not shown that this document was material under Brady. As to his Giglio claim, Petitioner has not shown that Johnson's testimony was false, that the prosecutor should have known that the testimony false, or that, even if the testimony was false, the testimony was material under Giglio. Accordingly, these claims do not afford Petitioner relief.

### H. Petitioner's Claim Regarding the Eleventh Circuit in Ground 19 is Without Merit.

Petitioner claims that he did not receive due process on appeal because the Eleventh Circuit erroneously denied his claim of error regarding the subpoena for Sharon Kline's proof work. (Doc. no. 9-3, p. 86.) According to Petitioner, the Eleventh Circuit misstated Kline's testimony by stating that $6,000 less was returned to the bank than was originally stolen. (Id.)

This Court has no authority to review Eleventh Circuit decisions and overturn them. Eleventh Circuit precedent "clearly forecloses a habeas court from granting collateral relief on a matter raised on direct appeal." Gilbert v. United States, 640 F.3d 1293, 1331 (11th Cir. 2011); Nyhuis, 211 F.3d at 1343. Thus, Petitioner's claim is clearly without merit and cannot provide a basis for habeas relief.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Petitioner's motion to address his new claims be **DENIED** (doc. nos. 6, 8), the § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 28th day of July, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA